| | AUSA: | John N. O'Brien | Telephone: (313) 226-9100 |
|---|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant | Task Force Officer: | Samer Kato, FBI | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

In the Matter of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Location Data for a Cellco Partnership d/b/a Verizon
Wireless Cellular Telephone
(More Fully Described in Attachment A.)

) ) ) ) ) )

Case No.

Case: 2:17−mc−51688
Assigned To : Battani, Marianne O.
Assign. Date : 12/19/2017
Description: RE: SEALED MATTER
(EOB)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(describe the property to be searched and give its location):*

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____ , there is now concealed *(describe the property to be seized):*

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

See Affidavit. To ensure compliance with the Pen Register Statute, this Search Warrant Application sets forth requirements in 18 U.S.C. § 3122 and the Search Warrant acts as a Pen Register order under 18 U.S.C. § 3123. Accordingly, the undersigned attorney certifies: (i) he / she is an "attorney for the government," (ii) FBI _____ is the law enforcement agency conducting the investigation, and (iii) the information sought is likely to be relevant to an ongoing investigation of this agency.

☐ Continued on the attached sheet.

☑ Delayed notice _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Search Warrant Applicant's signature*

Samer Kato, Task Force Officer, FBI
*Agent's printed name and title*

*Pen Register Applicant's signature*

John N. O'Brien II, Assistant U.S. Attorney
*AUSA printed name and title*

Search warrant sworn to before me and signed in my presence and/or by reliable electronic means.

Date: December 19, 2017

City and state: Detroit, MI

*Judge's signature*

David R. Grand, U. S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(586) 250-8082.** | Case No. <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Federal Task Force Officer Samer Kato, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular device assigned dialed number **(586) 250-8082**. The service provider for the target cellular device is **Cellco Partnership dba Verizon Wireless, 180 Washington Valley Road, Bedminster, New Jersey**. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site information and 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator.

-1-

2.    I am a Federal Task Force Officer with the Federal Bureau of Investigation and have experience in the investigation, apprehension and prosecution of individuals involved in narcotics trafficking offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3.    The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    One purpose for applying for this warrant is to determine the target cellular device's location. However, there is reason to believe the target cellular device is currently located in this district. The user is known to spend most of his time in Detroit, Michigan.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that [UNKNOWN SUBJECT, aka FNU LNU, aka FNU LNU 2] has violated 21 U.S.C. 841(a)(1), the possession with intent to distribute a controlled substance. UNKNOWN SUBJECT, aka FNU LNU, aka FNU LNU 2 is believed to have committed  these crimes on or about November 20, 2017.  There is also

2

probable cause to believe that locating the target cellular device will assist law enforcement in the identification of UNKNOWN SUBJECT, aka FNU LNU, aka FNU LNU 2, who will eventually be a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

6. The Federal Bureau of Investigation, Macomb County Gang and Violent Crime Task Force (MCGVCTF), in October, 2016, initiated an investigation into the activities of ANTONIO LEWIS. The investigation concerns possible violations by LEWIS and other individuals, both known and unknown, of Title 21, United States Code, Section 841(a)(1).

7. Investigation to date has included review of oral and written reports along with documents about the investigation that I have received from members of the FBI and other law enforcement agencies; discussions I have had personally concerning this investigation with experienced drug trafficking investigators; physical surveillance conducted by the FBI and other law enforcement agencies, the results of which have been reported to me either directly or indirectly; public records; telephone toll records, pen register and trap and trace information, and telephone subscriber information; statements of confidential sources; consensually-

3

recorded meetings and phone calls with LEWIS; the controlled purchases of cocaine from LEWIS; and court authorized intercepts.

8.      The investigation has verified that LEWIS is in fact distributing cocaine in the Detroit Metro area. I believe, based upon the investigation, that one of LEWIS' cocaine suppliers is the user of cellular telephone 586-659-5779.

9.      On November 19, 2017, at approximately 4:30pm, an incoming call from an unknown male caller (FNU LNU), using (586)659-5779, to LEWIS, using his cellular telephone, was intercepted. The following is an excerpt of the call:

- LEWIS:           "What up?"
- FNU LNU:         " Hey, he said it was all dust man, he had to switch it out"
- LEWIS:           "Oh"
- FNU LNU:         "He said he ain't wanna give it out, he said when he, when he cracked it open, he said it was all dust, he was like fuck it."
- LEWIS:           "Alright"
- FNU LNU:         "So he told me about another hour"
- LEWIS:           "Alright"
- FNU LNU:         "Alright"

4

- LEWIS:          "Yup"

- FNU LNU:        "Yup"

10.    Based upon my training, experience, and information gathered throughout this investigation, I believe that FNU LNU was explaining to LEWIS that the cocaine he was to supply LEWIS was "dust" and that FNU LNU's unknown supplier had to "switch it out". LEWIS is then told by FNU LNU that once his cocaine supplier switches out cocaine, FNU LNU would take possession of the cocaine and pass it along to LEWIS. FNU LNU then explained to LEWIS that the process of switching out the cocaine would take "about another hour". LEWIS agreed to this and the conversation was concluded. I believe that when FNU LNU stated, "cracked it open" he is referring to a kilogram of cocaine and that when he stated "dust" he was indicating that the cocaine was loose, not compressed. It is common for drug distributors to dilute, or cut, their cocaine which makes it less potent. I believe that FNU LNU's supplier was concerned that the cocaine he secured was possibly diluted and that is why he did not want to distribute it to FNU LNU and that resulted in the delay in providing cocaine to LEWIS.

11.    On November 19, 2017, at approximately 5:12 pm, LEWIS sent an outgoing text message to (586) 659-5779 where he advised that he would meet with FNU LNU the following day.

5

12.     On November 20, 2017, at approximately 5:32 pm, LEWIS placed a telephone call to (586) 659-5779 and spoke with FNU LNU. LEWIS and FNU LNU agreed to meet at a predetermined location.

13.     Physical surveillance was conducted and LEWIS was observed meeting with an unknown black male subject, consistent with a drug exchange. Based upon my training, experience, and information gathered throughout this investigation, I believe that FNU LNU supplied LEWIS with cocaine to distribute.

14.     On November 30, 2017, LEWIS again contacted the user of cellular telephone (586) 659-5779, FNU LNU, and LEWIS, though coded language, told FNU LNU that he needed to meet with FNU LNU to obtain cocaine for distribution. LEWIS and the FNU LNU agreed to meet the next morning.

15.     On December 1, 2017, a physical surveillance was conducted and LEWIS was again observed meeting with an unknown black male subject, believed to be the same subject from the November 20, 2017 meeting, consistent with a drug exchange. Based upon my training, experience, and information gathered throughout this investigation, I believe that FNU LNU supplied LEWIS with cocaine to distribute.

16.     On November 6, 2017, an administrative subpoena was provided to Verizon Wireless requesting subscriber information for telephone number (586) 659-5779.

17.     On November 10, 2017, Verizon Wireless responded and provided information associated with cellular telephone (586) 659-5779. The information provided did not include an account name and listed an account address in Dublin, Ohio.

18.     On December 4, 2017, a query of public source information revealed no subscriber information and/or name associated with telephone number (586) 659-5779.

19.     On December 6, 2017, at approximately 6:09 p.m., LEWIS sent an outgoing text message to (586) 659-5779 where LEWIS tells FNU LNU "LETS GOOO". On the same day, at approximately 6:22 p.m., LEWIS placed a telephone call to (586) 659-5779 but the call went unanswered.  Based upon Based upon my training, experience, and information gathered throughout this investigation, I believe that LEWIS is attempting to get in contact with FNU LNU, the user of (586) 659-5779, to obtain more cocaine.

20.     On December 6, 2017, at approximately 8:47 p.m., an incoming call from an unknown male caller (FNU LNU 2), using (586) 250-8082, to LEWIS, using his cellular telephone, was intercepted. The following is an excerpt of the call:

- LEWIS:          "What up doe?"

- FNU LNU 2:      "Yeah, this is the, uh, new one."

7

- LEWIS:        "Okay, alright."
- FNU LNU 2:    "Yeah, lock it in."
- LEWIS:        "You said, you said what?"
- FNU LNU 2:    "I said lock it in."
- LEWIS:        "Okay, for sure."
- FNU LNU 2:    "Alright."
- LEWIS:        "Alright."

21.     On December 6, 2017, at approximately 9:20 p.m., LEWIS sent an outgoing text message to (586) 250-8082 where LEWIS tells FNU LNU 2 "5, tenths short. I havent been few tenths off last few times this the most this time. Mostly just 3tenths". On the same day, at approximately 9:24 p.m., LEWIS received an incoming text message from (586) 250-8082 where FNU LNU 2 LEWIS "He said will make it up". LEWIS sent an outgoing text message to (586) 250-8082 where LEWIS responds to FNU LNU 2 "Kool thanks".

22.     Based upon my training, experience, and information gathered throughout this investigation, and based upon previous intercepted telephone calls, I believe that FNU LNU, the user of (586) 659-5779, and FNU LNU 2, the user of (586) 250-8082, are the same individual, LEWIS' cocaine supplier. I further believe that LEWIS' drug supplier was calling LEWIS to provide him

8

with his new telephone number. In addition, based upon my training, experience, and information gathered throughout this investigation, I believe that during the text conversations on December 6, 2017, LEWIS was telling FNU LNU 2 that his last cocaine supply was less then what LEWIS ordered. LEWIS' is then told by FNU LNU 2 that "He said will make it up". I believe that FNU LNU 2 referred to that FNU LNU 2's cocaine supplier would make up the weight that LEWIS was short.

23.    On December 7, 2017, a query of public source information revealed Verizon Wireless is the service provider for telephone number (586) 250-8082. In addition, it was revealed that telephone number (586) 250-8082 is subscribed to by "Warren, MI".

24.    Information obtained from this search warrant will be used to attempt to locate UNKNOWN SUBJECT, aka FNU LNU, aka FNU LNU 2 within the next 30 days. The information gathered and techniques proposed reduce the chance that the subject(s) will abscond from this investigation and pending judicial action by limiting the chance that he/she will learn of the outstanding charges.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

25.    Based on the foregoing, I request that the Court issue the proposed
search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C.
§ 2703(c).

26.    Because collecting the information authorized by this warrant may fall
within the statutory definitions of a "pen register" or a "trap and trace device," *see*
18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen
Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant
therefore includes all the information required to be included in a pen register
order. *See* 18 U.S.C. § 3123(b)(1).

27.    In my training and experience, I have learned that cellular phones and
other cellular devices communicate wirelessly across a network of cellular
infrastructure, including towers that route and connect individual communications.
When sending or receiving a communication, a cellular device broadcasts certain
signals to the cellular tower that is routing its communication. These signals
include a cellular device's unique identifiers.

10

28.     In my training and experience, I have learned that **Cellco Partnership dba Verizon Wireless, 180 Washington Valley Road, Bedminster, New Jersey** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

29.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator)

11

capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

30. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is

12

collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

31.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any

13

stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

32.     I further request all precision location information, E-911 Phase II data, GPS data, and latitude-longitude data.

33.     I further request, pursuant to 18 U.S.C. § 3123, the installation of a pen register and trap and trace device with real time cell site information, including all packet switched data, to monitor non-content signaling and routing information. I also request disclosure by the service provider all information necessary to implement the requested techniques, including subscriber information, extended subscriber information, handset information, and per call measurement data (PCMD).

34.     Pursuant to 18 U.S.C. § 3123(b), the government requests that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the target cellular device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the target cellular device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the target cellular device.

14

35.    I further request that the service provider provide call detail records, including cell site location information, for the past thirty (30) days. 18 U.S.C. § 2703(d).

36.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

37.    I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

15

38.    A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

Respectfully submitted,

Federal Task Force Officer Samer Kato
Federal Task Force Officer with the
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HONORABLE DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

Date:    December 19, 2017

16

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (586) 250-8082, whose wireless provider is CellCo Partnership d/b/a Verizon Wireless.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: Unknown is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (586) 250-8082 is the phone number to which the device is to be attached; and 21 U.S.C. § 841(a)(1) is the offense, or one of the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

## ATTACHMENT B

### Particular Things to Be Seized
### from Cell Phone Service Provider

1.      Information about the target cell phone and its location, later referred
to collectively as location information, include all precision location information,
E-911 Phase II data, GPS data, latitude-longitude data, per call measurement data
(PCMD), and real time cell site information for 30 days, beginning from the date
the warrant was issued. The information includes monitoring non-content
signaling and routing information, including all non-content packet switched data,
through the installation and use of a pen register and trap and trace device pursuant
to 18 U.S.C. § 3123 by the service provider and the Federal Bureau of
Investigation. Because the request for such location data may include use of a "pen
register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the
application and the warrant are designed to comply with the Pen Register Statute as
well as Rule 41. The application therefore includes all information required for
and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant
therefore includes all the information required for and serves as a pen register
order, 18 U.S.C. § 3123(b).

2.      To the extent that the information described is within the possession,
custody, or control of the service provider, the service provider is required to
disclose all location information to the government.

3.    All subscriber, extended subscriber, handset information, and WI-FI MAC address, as well as all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible. This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government.

4.    Call detail records, including cell site location information, for the past thirty (30) days. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant or investigation unless disclosure is to their attorneys for purposes of seeking legal advice or disclosure is explicitly allowed / ordered by the Court.

5.    This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

| | AUSA: | John N. O'Brien | Telephone: (313) 226-9100 |
| --- | --- | --- | --- |
| AO 93 (Rev. 11/13) Search and Seizure Warrant | Task Force Officer: | Samer Kato, FBI | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT

for the
Eastern District of Michigan

| In the Matter of | ) |
| --- | --- |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| | ) Case No. |
| Location Data for a Cellco Partnership d/b/a Verizon | ) |
| Wireless Cellular Telephone | ) |
| (More Fully Described in Attachment A.) | ) |

Case: 2:17-mc-51688
Assigned To : Battani, Marianne O.
Assign. Date : 12/19/2017
Description: RE: SEALED MATTER
(EOB)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____.
*(describe the property to be searched and give its location):*

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the property described above, and that such search will reveal *(describe the property to be seized)*:

See ATTACHMENT B.

This Warrant, including its attachments, also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: Unknown aka FNU LNU _____ is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; ( 586 ) 250 - 8082 _____ is the phone number to which the device is to be attached; and 21 U.S.C. § 841(a)(1) is the offense, or one of the offenses, to which information relates.

**YOU ARE COMMANDED** to execute this warrant on or before   01/01/2018 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for 30 days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     December 19, 2017   2:39 pm _____

_____
*Judge's signature*

City and state:   Detroit, MI _____

David R. Grand,   U. S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*